## Chesapeake & Ohio Railway Company v. Salyers.

## Salyers v. Chesapeake & Ohio Railway Company.

(Decided November 18, 1919.)

## Appeals from Boyd Circuit Court.

1. New Trial—Newly Discovered Evidence.—Upon appeal to this court, from an order granting a new trial upon the grounds of newly discovered evidence, the verdict was flagrantly against the evidence, or not sufficient to support the verdict, it will be assumed, that the evidence, upon the trial, was of such character and quality, as to justify the court in granting a new trial, in the absence, from the record, of the evidence heard upon the trial.

2. New Trial—Discretion of Court.—The trial court has a wide discretion in the granting of a new trial, and the discretion of the trial court, will not be interfered with, unless it clearly appears, that it abused its discretion.,

3. Appeal and Error—Verdict.—Upon appeal to this court, the verdict of a properly instructed jury, will not be interfered with, unless the verdict is palpably and flagrantly against the evidence.

4. Railroads—Contributory Negligence—Question for Jury.—Where the proper care, on the part of one crossing a railroad crossing, depends upon many circumstances, such as the state of the weather, light, signals, speed of train, number of tracks and trains, and other circumstances, it is a question for the jury, under all the surrounding circumstances, as to whether or not, he was guilty of contributory negligence.

JOHN W. WOODS and ARTHUR BRYSON for Salyers.

WORTHINGTON, COCHRAN & BROWNING and PRICHARD & PUTMAN for the railroad company.

OPINION OF THE COURT BY JUDGE HURT—Affirming. These appeals are made upon the same record.

On the night of November 28, 1914, at about midnight, John Salyers, was struck, as he claims, by either the tender of an engine of the Chesapeake and Ohio Railway Company, or, by a car of one of its freight trains, while on the Chestnut street crossing, at Clyffeside, which is a small town, upon the line of the railroad, about halfway between Ashland and Catlettsburg. Salyers claims, that, on the night mentioned, he was returning from Ashland to his home at Keyes creek, upon a street car, and when he arrived at Clyffeside, near Keyes creek, he got off of the street car, for the purpose

of going to the offices of the Bates-Rogers Construction Company, which was engaged in certain construction work, at Clyffeside, and for which, he had, until recently, theretofore, been engaged in working. His purpose was to secure further employment. When he got off of the street car, he went over the crossing and to the plant of the construction company, but, not finding the foreman, under whom he had formerly worked, he undertook to return and to go over the crossing, again, and thence to his home, at Keyes creek, and when he arrived at the Chestnut street crossing, which is a public highway or street crossing over the tracks of the railroad, at that point, and when about ten feet from the "west bound" tracks, he looked along the railroad, in both directions, to ascertain if any cars were moving upon the tracks with which he might come in contact, and neither seeing nor hearing the approach of any cars of the railroad company, he started to go over the tracks, and when upon a "cross over" track, which connects the "east" and "west bound main" tracks, at the crossing, he was struck, by a car, or the tender of an engine with cars attached, which was moving three or four miles an hour, knocked down and dragged along the track for about fifty feet, when he was thrown out, or succeeded in extricating himself. The engine or the engine with cars attached proceeded on, and in about one-half hour, returned, with a train of cars attached, when Salyers was discovered beside the track. There was no light upon the end of the car, or the tender of the engine, which struck him, and no warning of its approach was given by the ringing of a bell or whistle, and he did not know of its approach, until it struck him. The result of the collision was, that Salyers' right leg was cut off above the knee, the heel of his left foot cut off, a hip was broken, a hole torn in his right side, and a wound torn in his abdomen, seven or eight inches in length, and extending down to the line of the scrotum. According to Salyers, the night was very dark, with rain falling, and it was with difficulty, that one could find his way. It appears, from the evidence, that, at the crossing, which is a crossing from the county road, over into a street or road which leads to certain manufacturing plants, there are three railroad tracks called the "east" and "west bound main" tracks, and probably a middle track and a "cross over" track, connecting the "east

and west bound main" tracks. The testimony, as to the location of the tracks, and buildings and places mentioned in the evidence, is not intelligible, since the witnesses testified with relation to maps, which were used to illustrate the evidence given upon the trial, but which the parties have not thought to be necessary to accompany the record. For the same reason, the position of witnesses, relative to the places, where they testified, that things occurred, and which illustrated their ability to see and know the things about which they testified, can not be appreciated, although these matters could be fully understood and appreciated by the trial court. It was, further, proved, without contradiction, that the crossing, was a very public one, inasmuch as there were many dwellings and business houses in close proximity to it, and that, for a considerable time, before the injury, seven to eight hundred persons passed over the crossing daily, and it was used habitually in that way, both by day and at night, with the knowledge of the employees of the railroad, and was such a place as they were bound to expect the presence of persons upon the tracks of the railroad. At the time of the injuries complained of, it seems, that a freight train, of the railway company, was proceeding toward the east, and when it arrived at Clyffeside, it received orders to attach a number of freight cars, which were standing upon a track, called the "hole" track, and in order to do this, it was necessary to disengage the engine from the remainder of the train, to back the engine over the "cross over" track, and to proceed along another track, until connection could be made with the cars upon the "hole" track, and then to return, with them, to the track where the disengaged cars were left. In so doing, no light was shown upon the end of the tender, and the theory of the plaintiff, is, that Salyers was struck by the tender of the engine, as it was endeavoring to go over the crossing. The railway company, contends, that a warning of the movement of the engine, was given by the continuous ringing of an automatic bell.

Salyers instituted this action against the railway company and the engineer, conductor and fireman, who were in charge of the freight train, to recover damages for his injuries, alleging, that they were caused from the negligence of the employees of the railroad company,

in the management and operation of the train. The defense, interposed, was a denial of the negligence alleged, and in addition, a plea of contributory negligence upon the part of Salyers, without which his injuries would not have been received. A trial was had of the action, in March, 1917, which resulted in a verdict of the jury and a judgment in favor of Salyers, in the sum of $18,000.00 against all of the defendants. The railway company and its co-defendants moved, the court, for a new trial, among other alleged reasons, upon the grounds, (1) that the verdict was palpally and flagrantly against the evidence, (2) the verdict was excessive and superinduced by passion and prejudice, (3) it was not supported by the evidence, (4) and because of newly discovered evidence, in their behalf. In support of the ground, based upon the newly discovered evidence, the affidavits of the newly discovered witnesses, containing the facts, to which they would testify, were filed, together with the affidavits of the agents of the railway company, as to when the evidence of the new witnesses was discovered, and the diligence exercised by them, in preparing the defense. Salyers, also, filed many affidavits, in an endeavor to controvert the truth of the affidavits, filed by the railway company and its co-defendants. The motion, for a new trial, was sustained and the verdict and judgment set aside, over the objection of Salyers, who saved an exception to the ruling, and prepared and filed a bill of exceptions, which was approved by the court, and made a part of the record.

Thereafter, another trial was had, in November, 1917, which resulted in a verdict and judgment in favor of Salyers against the railway company, alone, in the sum of $8,000.00. Salyers, in due time, entered a motion to set aside this verdict and judgment, and to substitute, for it, the first verdict and judgment in the action, which had been erroneously set aside, as contended by him, and together with this motion, filed grounds, and moved the court for a new trial. The railway company, also, filed grounds and moved the court to set aside the verdict and judgment, and to grant a new trial. The motions of both parties were overruled, and each of them has appealed. (a) The motion of Salyers to set aside the last verdict and judgment, and to substitute, for it, the first verdict and judgment, will be first considered. It is urged, by

him, that the first trial was without error, and the court had no good reason to set it aside and to grant a new trial. Conceding, that in the matter of granting a new trial, the trial courts have a wide discretion, and this court will not interfere with that discretion, unless it has been abused, to set aside a verdict and judgment when there is no error in the trial, and where there is no other good reason for so doing, is, of course, an abuse of discretion by the trial court, and this court has often asserted its right to correct erroneous rulings of the circuit court, in granting a new trial. To authorize us to do so, however, it must be clearly shown, that the trial court has abused its discretion. It is well established, that if a circuit court erroneously grants a new trial, and the party excepts to the ruling, and when another trial is had will move the court to set aside the last verdict and judgment, and to substitute, the one formerly erroneously set aside, and his motion is overruled, upon appeal to this court, the order, granting the new trial, will be reviewed, and if found erroneous, the latter judgment will be reversed, and the trial court directed to enter, in its stead, a judgment upon the verdict erroneously set aside. Perkins v. Ogilvie, 148 Ky. 209; Ross v. Kohler, 163 Ky. 583; Nolan's Admr. v. Standard Sanitary Mfg. Co., 111 S. W. 293; Meek v. Patton, 12 K. L. R. 796; Richards v. L. & N. R. R. Co., 20 K. L. R. 662; Curry v. Fetter, 15 K. L. R. 494; L. & N. R. R. Co. v. Ricketts, 21 K. L. R. 662. The order granting a new trial, in this action, however, does not indicate upon what grounds, the court based its decision. It is not claimed, that any error prejudicial to the railway company, or its co-defendants, was made in the giving of instructions to the jury, and we observe none in that particular. To justify the holding, that the court abused its discretion in granting the new trial, it will be necessary to examine the grounds offered for the new trial and, only in the absence of no sufficient reason for its granting, could it be held, that the order was erroneous. To determine whether the court erroneously held, that the verdict was flagrantly against the evidence, or so excessive as to indicate passion and prejudice on the part of the jury, or was not supported by the evidence, at all, or that the newly discovered evidence was of such character, as to require, a new trial, in order that justice be

done, it is, of course, necessary, that the evidence given upon the trial should be before us, as otherwise, we can only conjecture as to what it was, or what it proved. The appellant, Salyers, while he made and filed a bill of exceptions of the matters occurring at the trial, and which refers to and, by reference, makes a part of it, the testimony of the witnesses given upon the trial, the transcript of their evidence is not embraced in the record. Under these circumstances, it can only be assumed, that the character and quality of the evidence upon the trial, was such as to justify the trial court, in granting a new trial, as it did. Prewitt v. Wilborn, 184 Ky. 642, and cases there cited. (b) The railway company urges only two reasons why the last verdict and judgment should be set aside, and a new trial granted. These are: (1) The verdict is flagrantly against the evidence, and (2) Salyers was guilty of contributory negligence, as a matter of law. It would be a needless waste of time, to undertake to set out the various statements, made by the numerous witnesses upon the last trial. The transcript of their evidence is volumnious, and much of the evidence is very contradictory. The evidence for the injured man was amply sufficient to require the submission of the cause to the jury, and to sustain the verdict. This court adheres to the rule, that the verdict of a properly instructed jury will not be interfered with, unless it is palpably and flagrantly against the evidence, and the fact, that the evidence is conflicting or that the number of witnesses testifying for one side, are greater than the ones, testifying for the other, does not furnish cause for holding, that a verdict is palpably or flagrantly against the evidence. Southern Ry., etc. v. Alford's Admr., 150 Ky. 808; Lexington Ry. Co. v. Herring, 29 K. L. R. 794; Cincinnati Warehouse Co. v. Garvey, 138 Ky. 351; Thompson v. Thompson, 93 Ky. 437; Young v. Young, 19 K. L. R. 54; L & I. R. R. Co. v. Roemele, 157 Ky. 84. Many things, in evidence were corroborative of the testimony of Salyers, as to the acts of negligence alleged, which resulted in his injury, and the jury are the judges of the credibility of the witnesses, and the weight to be given circumstances, in proof, and they are peculiarly fitted for such duty, when the facts are numerous and many of them controverted. As to the second ground,

it is conceded, that the engine was backed over the crossing with no light upon the tender. There was evidence, from numerous witnesses, that the night was dark, with rain falling, though there was other evidence to the effect, that the light was sufficient to enable one to see a considerable distance. Certain witnesses testified to circumstances, from which it might be inferred, that Salyers was intoxicated and, for that reason, did not exercise the care, which an ordinarily prudent man would have exercised under similar circumstances, while there were other witnesses, who testified to facts and circumstances, indicating, that he was not intoxicated. He testified, that, before proceeding upon the railroad tracks, he took the precaution to look in each direction and saw nor heard anything of the approach of the engine, and that it was too dark to see anything clearly. The question as to whether Salyers exercised proper care, depended upon all the circumstances surrounding him, such as the presence and absence of light, the giving of proper signals, the speed of the moving engine, the care taken by him to observe the engine and to keep out of its way, the presence of other cars and trains, and under all the circumstances, it was a question for the jury to determine, whether he was guilty of contributory negligence. So it is in every such case of controverted facts. C. & O. Ry. Co. v. Ward's Admr., 145 Ky. 733; Carter v. C. & O. Ry. Co., 150 Ky 525; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 74; I. C. R. Co. v. Sullenyer's Admr., 160 Ky. 455.

The judgment is therefore affirmed upon the appeal of both Salyers and the railway company.