EQUIFAX SERVICES, INC., Appellant,

v.

William LAMB, Appellee.

Court of Appeals of Kentucky.

May 8, 1981.

Discretionary Review Denied Oct. 6, 1981.

James David Bryant, Bowling Green, for appellant.

Kelly Thompson, Jr., Bowling Green, for appellee.

Before HAYES, C. J., and LESTER and WINTERSHEIMER, JJ.

HAYES, Chief Judge.

Equifax Services, Inc. appeals from a judgment of the Warren Circuit Court which awarded William Lamb $25,045.15 for compensatory damages and $50,000.00 for punitive damages.

Lamb brought the action for common law defamation and for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. A jury trial resulted in a verdict for Lamb. Equifax, who had previously made directed verdict motions, moved for a judgment notwithstanding verdict and a new trial. The court granted the new trial motion, limiting it to damages. At the second trial, the trial court determined that the issue of damages could not fairly be litigated apart from liability. The trial court believing it erred in granting the new trial, set aside its order granting a new trial and entered a judgment on the original verdict.

On appeal Equifax alleges that the trial court erred in refusing to grant its original motion for judgment notwithstanding verdict and alternatively that the trial court erred in setting aside its new trial order and reinstating the original verdict and entering a judgment thereon.

Lamb resided in Indiana until 1977, when, along with his wife Portia, he moved to Bowling Green, Kentucky. He applied for automobile liability insurance with the Kentucky Farm Bureau Insurance Company. In a letter dated June 22, 1977, the Farm Bureau informed Lamb that it was cancelling his insurance. The letter stated:

This action was influenced by information in a consumer report, made at our request by Equifax, Inc., 1135 S. 4th

Street, Louisville, Kentucky, a reputable source of information for business decisions.

The Lambs set about contacting Equifax to find out what information had been reported to cause their insurance to be cancelled.

Lamb telephoned the Louisville office of Equifax. Curtis Mellot, an assistant branch manager, testified that on June 23rd, he disclosed to Lamb the contents of the Bowling Green report of May 23rd. Mellot sent a copy of that report, the only one his office had at the time, to Bowling Green for the Lambs to pick up. Betty Donohue of the Cincinnati office spoke with Mrs. Lamb on June 27th at which time she read Mrs. Lamb a former address report of June 2nd, which Donohue forwarded to Louisville. Donohue stated that Mrs. Lamb made no comments about drinking and that there was no mention of Lamb's drinking in the report.

Mellot testified that after the Louisville office received the former address report, he disclosed the contents of that report to Lamb over the telephone. According to Mellot, the conversation took place after June 23rd and before July 7th. Lamb took exception to two items on the report: (1) the reason for his first divorce; and (2) information concerning an arrest report. Equifax personnel testified that Lamb was not allowed to have a copy of the report because he disputed the information. Equifax ordered a reinvestigation which resulted in a July 7th report. The July 7th report deleted the first disputed item and again listed the second because it had been verified with police records.

Barbara Maines, formerly of Equifax, stated that on July 12th, she read Lamb the reinvestigation report to which Lamb took no exception. Lamb requested a copy of the report which Maines forwarded to Kentucky. Marilee Ringley of the Bowling Green office, testified that Portia Lamb signed for the May 23rd report on June 27th, and that Lamb signed for the July 7th report on July 22nd. At that time Lamb indicated inaccuracies in the July 7th reinvestigation report. Because of Lamb's dis-

puting the July 7th report, additional reinvestigation was conducted which resulted in a July 28th report which was substantially the same as July 7th.

Portia Lamb testified that she contacted Equifax's Cincinnati office after receiving the cancellation notice from Farm Bureau. Mrs. Lamb said that the report disclosed to her stated that Lamb drank to excess and ran around on his first wife in 1964. Mrs. Lamb insisted that the reports she saw were not the one which was read to her over the phone. Lamb testified that no one would tell him anything concerning his insurance cancellation.

The Equifax employees who spoke with the Lambs testified that they did not inform Lamb or did not remember if they told the Lambs that a copy of the reports went to Marketing Specialists of National Indemnity Company, referred to as Marketing Insurance. These employees also stated that Lamb did not request the names of other recipients of the reports. However, the July 7th report of which Lamb received a copy listed under agency the name Marketing Insurance.

The only section of the Fair Credit Reporting Act of which a violation was instructed upon is 15 U.S.C. § 1681g which is set out in part here:

Disclosures to consumers.—(a) Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:

(1) The nature and substance of all information (except medical information) in its files on the consumer at the time of the request.

. . . .

(3) The recipients of any consumer report on the consumer which it has furnished—

(A) for employment purposes within the two-year period preceding the request, and

(B) for any other purpose within the six-month period preceding the request.

15 U.S.C. § 1681h concerns the conditions of disclosure to consumers.

Conditions of disclosure to consumers.—

(a) A consumer report reporting agency shall make the disclosures required under section 609 [§ 1681g of this title] during normal business hours and on reasonable notice.

(b) The disclosures required under section 609 [§ 1681g of this title] shall be made to the consumer—

(1) in person if he appears in person and furnishes proper identification; or

(2) by telephone if he has made a written request, with proper identification, for telephone disclosure and the toll charge, if any, for the telephone is prepaid by or charged directly to the consumer.

15 U.S.C. § 1681n provides that one may recover actual and punitive damages for willful noncompliance. 15 U.S.C. § 1681o states that actual damages may be recovered in cases of negligent noncompliance.

■ Equifax urges that it complied with the disclosure requirements of the statute, the only issue under the Act, submitted to the jury. Our careful review of the record leads us to the same conclusion. All of the reports were disclosed to Lamb. He was even given copies of two of them. Lamb would argue that he was entitled to copies of all the reports. 15 U.S.C. § 1681g does not require the reporting agency to present copies of reports, but merely to disclose the nature and substance of the information. The record demonstrates no reluctance on the part of Equifax to disclose to Lamb. Indeed, the discovery taken during the suit revealed no additional information which had not already been disclosed in a timely fashion prior to the action being brought.

This present case is distinguishable from *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (Eighth Cir. 1976) in which the court held the agency violated the disclosure requirements by telling the consumer that the file was not available when, in fact, it was. In *Millstone*, it was also found that O'Hanlon had only partially disclosed the information in its files. There is no such evidence in the present case. The Louisville office disclosed the contents of the reports, when it received them, without any apparent reluctance or withholding of information.

Lamb insists that he was never given a copy of the report which was read to Mrs. Lamb by someone in the Cincinnati office. The only testimony that the report referring to drinking ever existed was Mrs. Lamb's. The Farm Bureau representative's testimony was to the effect that the Farm Bureau received four reports, none of which referred to Lamb's having drunk to excess. Those four reports were also identified and testified to by the parties. Assuming there were another report, there was still no violation of 15 U.S.C. § 1681g because the report was disclosed over the telephone.

■ Lamb would argue, in any event, that Equifax failed to disclose the name of Marketing Insurance, the other recipient of the report. Equifax personnel testified that the Lambs never requested such information. It is not clear whether 15 U.S.C. § 1681g requires the consumer to request each item of information specifically. We have searched the case law and have found no interpretation of that particular provision. The statute says that upon request the agency must furnish the required items. The word request is in the singular. Since this is a statute designed to protect the consumer, we believe that any request for information by a consumer concerning his file should require the agency to report each of the three items listed. Such an interpretation would seem to be consistent with 15 U.S.C. § 1681h, concerning conditions of disclosure, which speaks of required disclosures, plural, and not a required disclosure.

■ Assuming that Equifax were also required to disclose the other recipient of the report, we will examine the issue further. The Equifax employees stated they did not specifically tell Lamb of the other

recipient. The name, however, was disclosed on the July 7th report, a copy of which was given to Lamb. The evidence certainly does not demonstrate a willful failure to disclose, but at most a negligent one. Therefore, Lamb would have been entitled to actual damages sustained by reason of the failure pursuant to 15 U.S.C. § 1681*o*. However, assuming that such disclosure were actually required, there could be no recovery because there was no proof of damages resulting from the failure to disclose the name of the second recipient.

We are aware that *Ackerley v. Credit Bureau of Sheridan, Inc.*, 385 F.Supp. 658 (D.C.Wyo., 1974) found that under 15 U.S.C. § 1681n, liability for willful violations, actual damage is not required to enforce liability under the Act. *Ackerly* goes on to state, however, that there is no strict liability under the Act, the plaintiff bearing the burden of proving willfulness. In the present case, there was no proof of willful failure to disclose the name of the second report recipient. In the absence of willfulness, Lamb could only recover actual damages under 15 U.S.C. § 1681*o* for negligent noncompliance, damages which he did not prove.

Even under the most favorable interpretation of the Act, Lamb failed to come forward with sufficient evidence to create a jury question on failure to disclose. The trial court erred in failing to grant the judgment notwithstanding verdict. *See Hoskins v. Hoskins*, Ky., 316 S.W.2d 368 (1958).

■ In passing, we would note that the procedural history of this case is rather bizarre. The trial court's course of action, while questionable, has some support. Since a court may after a second trial, on a motion for judgment notwithstanding verdict, enter a judgment on the verdict it erroneously set aside, it is conceivable that that court could determine that its granting of a new trial was in error and reinstate the original verdict and enter judgment there-

on. *See Chesapeake & Ohio Railway Company v. Salyers*, 187 Ky. 144, 218 S.W. 474 (1919). In any event, the court's action did not work to prejudice any of the parties. For that reason, we hold that the procedural course pursued by the trial court was not erroneous.

We have not ignored the challenges which Equifax has raised in its reply brief to Lamb's brief on appeal. The inclusion by Lamb of material ruled inadmissible by the trial court is inexcusable. The other claims made by Equifax are also meritorious. We would admonish counsel for Lamb to tread very carefully in the future, seeking always to pursue the proper course of presentation of his case.

The judgment is reversed with directions that a new judgment be entered in conformity with this opinion.

LESTER, J., concurs.

WINTERSHEIMER, J., concurs by separate opinion.

WINTERSHEIMER, Judge, concurring.

In general, the Fair Credit Reporting Act enacted by Congress has failed in some significant areas to adequately protect the credit applicant. Any procedures by a credit company which produce inaccurate reports based on obsolete or false information have an adverse effect on consumers. The system of not furnishing written reports upon request to an applicant until a release is executed, is highly questionable.