# Chesapeake & Ohio Railway Co., et al. v. Ward's Administrator.

(Decided December 7, 1911.)

## Appeal from Boyd Circuit Court.

1.  Personal Injury—Action for Damages—Railroads—Contributory Negligence.—Where a railroad is double tracked and one of the tracks at a street crossing is blocked by a passing train, one who goes upon the other track preparatory to crossing and is struck and killed is not guilty of contributory negligence as a matter of law, the blocking of one track by a passing train not being notice of the approach of a train on the other track. In such a case the question whether the defendant exercised ordinary care is for the jury.

2.  Instructions—Submission of Case on Ground Not Pleaded—When Not Prejudicial Error.—When in an action for damages against a railroad company by the administrator of one who is killed, failure to keep a lookout is not relied upon in the pleadings as a ground for recovery, it is not proper to submit the case on that theory, but where the only evidence on the point is that of the engineer who states that a lookout was kept, and all the evidence is directed to the questions of the dangerous and excessive rate of speed and failure to give timely warning of the approach of the train, an instruction submitting the case on the question of a failure to keep a lookout will not be considered prejudicial error.

3.  Verdict—Excessive.—Where a bright and intelligent girl, who at the age of fifteen and half years, with an expectancy of life of thirty-six years, equips herself for the duties of a stenographer, and after two months of service is earning $25.00 a month, a verdict of $12,500.00 will not be disturbed on the ground that it is excessive where she was negligently killed.

WORTHINGTON, COCHRAN & BROWNING for appellants.

DINKLE & PRICHARD and PROCTOR K. MALIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On the 13th of July, 1907, Cloetine Ward, a young lady of fifteen and one-half years of age was struck and killed by one of the Chesapeake & Ohio Railway Company's trains at what is known as the Broadway street crossing in the city of Catlettsburg. Her father, George W. Ward, qualified as her administrator and brought this action against the Chesapeake & Ohio Railway Company of Kentucky, Robert Brooks, its engineer, and

Clyde McGee, to recover damages for her death. The jury returned a verdict in plaintiff's favor for $12,500.00, and the defendants appeal.

At the point of the accident the company's road is double-tracked. On the south of these tracks is Center street, but between Center street and the railroad track is the single track of the Ohio Valley Electric Railway Company. The plant of the Wright-Saulsberry Lumber Company is located just north of the railway company's track. The lumber company has a switch track which runs parallel with the railroad track. Broadway street lies in the western part of the city of Catlettsburg, and is located about 300 feet east of the western limits of that city. The next street east of Broadway is Chaffee street, which is about 656 feet distant. Between Broadway and Chaffee streets the railroad tracks curve to the north. Center street is one of the principal streets of Catlettsburg; so is Broadway. Where these streets intersect, the town is thickly populated. Between the railroad tracks and the river, along and adjacent to Broadway street, are a large number of dwelling houses and a church. On the south side of Center street and of the railroad tracks is a school house and a number of dwelling houses. The people living in this vicinity must cross the railroad tracks at the Broadway street crossing in order to reach Center street. Those going to Ashland, or up into Catlettsburg, either upon the street car line, or by vehicle or otherwise, must cross the railroad tracks at the Broadway street crossing.

The decedent, Cloentine Ward, was employed by the Wright-Saulsberry Lumber Company as a stenographer. Their office is located some forty or fifty feet north of the railroad track. Upon the morning of the accident the decedent left the office of the company about 11:00 o'clock for the purpose of taking a street car and going to her home for her noon-day lunch. After leaving the office she walked south along Broadway until she reached the railroad tracks. At the time of the accident the crossing in question was blocked by a moving east bound freight train on the south track. Just before this train had cleared the crossing the decedent stepped upon the west bound track and was struck by an Ohio & Big Sandy passenger train approaching from the east. This train was some 20 or 25 minutes late, and was running at the rate of from 30 to 45 miles an hour; the weight of the evidence

being that the speed of the train was about 40 miles an hour.

The evidence for plaintiff is to the effect that the train came upon the public crossing without the ringing of a bell or the blowing of a whistle until it was almost upon the deceased, when the alarm blast was sounded, but too late for her to avoid being struck. At the time of the accident the deceased was earning about $25.00 per month. She was a very bright young girl. She had prepared herself for the profession of a stenographer, attending and graduating in the commercial course from the Parochial School of Ashland. Subsequently she attended school in Chicago. She had been working for the lumber company about two months, and during that time her salary had been increased.

The evidence for the defendants is to the effect that timely warning, both by ringing the bell and blowing the whistle, was given of the train's approach, and that at the time of the accident the view of those in charge of the train was obstructed by cars which were standing on the lumber company's switch.

It is not insisted that there was not sufficient evidence as to the rate of speed and as to the giving of timely warning of the train's approach to take the case to the jury. It is contended, however, that the decedent, in attempting to cross the track which was blocked by an east bound moving freight, was guilty of contributory negligence, and that because of this the court should have directed a verdict in favor of defendants. In this connection it is argued that the presence of a passing train was notice of the fact that the crossing was blocked, and that decedent should not, therefore, have undertaken to cross. We have applied this doctrine where crossing gates were lowered and a party attempted to cross. (See Harbison v. Louisville & Nashville Railroad Co., 127 Ky., 757.) The reason for the rule is that the lowering of the gates is notice of the fact that a train is approaching. That rule, however, has no application to the facts of this case. The presence of a train upon one of two tracks adjoining is no notice of the fact that another train is approaching upon the other track. We can not, therefore, say, as a matter of law, that decedent's conduct, in stepping upon the track, was such as to justify the court in taking the case from the jury. Chesapeake & Ohio Railway Co. v. Patrick, 135 Ky., 506. The question, whether

or not decedent exercised ordinary care for her own safety, was one for the jury.

It is also insisted that the court erred in submitting to the jury the question of the failure of the defendants to keep a lookout, and making such failure a ground for recovery, as the only negligence relied upon was the excessive and dangerous rate of speed of the train and the failure to give timely warning of the train's approach. While, of course, it is not proper to submit a case to a jury upon grounds not relied upon in the pleadings nor justified by the evidence, we conclude that, in view of the fact that the only testimony upon the question of lookout was given by the company's engineer, and he stated that a lookout was kept, and all the evidence was directed to the questions of speed and warning, the instruction submitting the case upon this phase was not prejudicial.

It also appears that the court, in its instructions, submitted to the jury the question whether or not the decedent's view of the approaching train was obstructed by a freight train at the time of the accident, and if such was the case, told the jury it was the decedent's duty to exercise greater care to learn of the approach of any train that might be coming, and to avoid injury from such train. It is insisted that this instruction is erroneous, and that the court should have told the jury that it was the decedent's duty to exercise increased care commensurate with the added danger. In the first place, we doubt very much if the crossing in question was of the character that required the giving of such an instruction; but even if it was, we conclude that under the facts of this case the use of the language "greater care" instead of "increased care commensurate with the added danger" was not prejudicial error.

Our attention is next called to the fact that the instructions authorized a recovery in case the defendant, Chesapeake & Ohio Railway Company, its servants or employes in charge of the train, failed to perform or discharge any or all of the duties theretofore set out in the instructions. It is insisted that this instruction is erroneous, because, if any of the employes were negligent, it was the engineer alone. So true is this proposition, that no evidence was introduced as to the negligence of any other employe in charge of the train, and we, therefore, conclude that the jury could not have been misled under the facts of this case.

Lastly, it is insisted that the verdict of $12,500.00 is

excessive. It appears that the decedent was a bright young girl; in fact, she must have been bright in order to acquire a knowledge of stenography at the early age of fifteen and a half years. While she had been at work only two months, her salary during that time had been increased and she was receiving $25.00 per month at the time of the accident. She had an expectancy of thirty-six years. She had adopted a business career. She intended to make her own living. With such a good start as a stenographer, it is not unreasonable to assume that within a short time she would have been receiving a much better salary.

In the recent case of C. N. O. & T. P. Ry. Co. v. Lovell's Admr., 141 Ky., 249, a verdict of $15,000.00 was upheld. There the court said:

"In estimating compensatory damages in cases like this the jury may receive evidence concerning, and have the right to consider the habits, character, physical condition, earning capacity, and probable duration of life of the deceased. They are allowed to have this data before them so that they may approximately, at least, fix the recovery at such a sum as will compensate the estate of the deceased for the destruction of his power to earn money. The loss to his estate is the amount that he will probably make and save if he should live the full limit of his expectancy of life. It would be unjust to the estate of the deceased if this loss was estimated on the theory that he would not increase his earning capacity, or that he would not make or save more than he was making or saving at the time of his death. It is of course probable that had Lovell lived to be an old man his earning capacity would not have increased, and that his estate would be but little when he died; but it is equally, if not more probable, that a young man of his habits and character would increase his earning capacity each year for many years, and in the end have an estate much larger than the amount awarded by the jury. Of course, how long a person will live, or how much he will earn, or how much he will save, or how much he will leave at his death are in the very necessity of things unknown problems. No human being can tell how long any person will live, and consequently no person can say how much his estate from a pecuniary standpoint will lose by his death. But in compensating the estate of the person who has been killed by negligence for the destruction of his power to earn money, it is more reasonable to assume that he will live the alloted time,

and that he will observe habits of thrift and industry, than to assume that he will be stricken with disease, or become idle and worthless, or die many years before his expectancy of life has ended.''

In the case of Louisville & Atlantic R. R. Co. v. Cox's Admr., 137 Ky., 388, deceased was a brakeman earning $40.00 per month. He had an expectancy of thirty years, and a verdict of $12,500 was held not excessive.

While time was when a man's earning power was much larger than that of a woman, it is by no means certain that the great disparity between their earning power will continue for any length of time. Within recent years women have entered into many fields of activity, and by their energy and faithful attention to work have demonstrated their peculiar fitness for many different kinds of employment.

When we consider that decedent had already equipped herself for work, and had demonstrated her capacity at the early age of fifteen and a half years, and that she had before her an expectancy of thirty-six years, during which the probability is that she would have greatly increased her earning power, we cannot say that the verdict of $12,500.00 is so excessive as to strike us at first blush as being the result of passion or prejudice.

Judgment affirmed.