# Louisville & Nashville Railroad Co. v. Setser's Admr.

(Decided June 20, 1912.)

## Appeal from Bell Circuit Court.

1. Trial—Instructions Directed To Be Given.—When this court on appeal indicates the instructions that should be given on the retrial of the case, the lower court should give the instructions as directed, and no others, if the evidence is substantially the same as it was on the trial from which the appeal was prosecuted.

2. Trial—Witness—Contradiction of.—When a witness gives testimony that conflicts with a written statement made by him previous to the trial, the written statement may be introduced as evidence for the purpose of contradicting the witness, but it is not admissible unless the witness has given testimony in conflict with it.

3. Damages—In an action to recover damages for death, where the jury was authorized to award exemplary as well as compensatory damages, and the evidence showed that the death of the deceased, a young and vigorous man, was caused by wilful negligence, a verdict for $20,000 will not be set aside on the ground that it is excessive.

BENJ. D. WARFIELD, C. W. METCALF and J. W. ALCORN for appellant.

B. B. GOLDEN, W. T. DAVIS, E. F. BAKER and BROWN & NUCKOLS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is the second appeal of this case. The opinion on the former appeal may be found in 138 Ky., 476.

On a return of the case the plaintiff, appellee here, filed an amended petition, in which he set up:

"That at the time stated in the petition and amendments, and on the occasion therein mentioned as to the ejection of said deceased from said train, the defendant, its said agents and servants in charge of said train, and persons unknown to the plaintiff acting with them, and by them caused, commanded and incited so to do, and whilst the said decedent was incapable from intoxication of caring for or protecting himself from danger, and when they knew he was in that condition or could have known it by the use of ordinary care, kicked, pushed and threw him from the steps of one of the coaches of said train while it was in rapid motion, and he immediately or soon thereafter came in contact with that

train or some train immediately following that train on said track and was by one of them run over, struck, mangled and killed, and all of which was caused and done, by the carelessness, negligence and wantonness of the defendant, its said agents and servants, and others acting with them and by them induced, caused and commanded so to kick, push and throw him from said train as aforesaid; that he was so kicked, shoved and thrown from said train in a deep cut, near the mouth of said tunnel, in a mountainous uninhabited locality, at a late hour at night, he being at the time unacquainted with the road and place and locality. He says he does not know and cannot state whether the deceased was caught and killed by the train from which he was ejected or by a train immediately and soon thereafter following said train over that road, but that he was killed by one of them.''

Upon the trial from which this appeal is prosecuted the evidence was substantially the same as that on the former appeal, which is set out quite fully in the former opinion. The evidence, both for the plaintiff and defendant, took a wide range, but the real vital questions in the case were the place at and the manner in which Setser was ejected from the train and whether the train was in motion or had come to a stop when he was ejected. Upon these points the evidence for the plaintiff showed that Setser was pushed, thrown or kicked from the train on which he was riding as a passenger, while it was in motion, in a deep cut and near the mouth of a tunnel and that when he was so ejected from the train, he fell or was thrown against the side of the bank of the cut, and rolled or fell back under the train from which he was ejected. While the evidence for the defendant was in effect that he was put off the train after it had stopped for the purpose of ejecting him, and that no violence was used and no more force than was reasonably necessary to eject him. That the place at which he was put off was several hundred feet from the cut at the mouth of the tunnel. That there was no cut on the side of the track where he was put off, and that the place was a safe and proper place at which to eject him.

After being instructed, and hearing the arguments of counsel, the jury returned a verdict assessing the damages in favor of the plaintiff at $20,000.00, for which amount judgment was entered. The motion for a new trial being overruled, this appeal is prosecuted and a

reversal asked for alleged errors that we will notice in the order in which they are presented in the brief of counsel for appellant.

1. It is first objected that the amended petition did not conform to the views of this court as expressed in the former opinion; but, we think it did. In that opinion we said:

"It is also insisted that the plaintiff's petition does not charge the defendant with pushing the deceased off the train while it was in motion. This is true. The petition and the amended petition seem to have been framed on the idea that the deceased was helplessly drunk, and that the defendant was negligent in putting him off in that condition on the side of the track. The idea of his being pushed off the train while it was in motion is not conveyed in the petition. And its general allegations of negligence must be construed to refer to the specific acts which it sets out. * * * * There was no evidence to take the case to the jury on the ground that the deceased was in such a condition as to be helpless and therefore should not have been put off on the side of the track. * * * While the testimony for the plaintiff did not show a right to recover on the ground set out in his petition, there was evidence introduced by him sufficient to take the case to the jury on two grounds, first, that the servants of the defendant pushed the deceased from the train while it was in motion, against the side of the cut, and thus caused him to fall under the train; and second, that he was put off the train in a deep cut near the month of the tunnel where it was not safe to put off a person. * * * The plaintiff's petition is not sufficient to sustain a recovery on the ground that the place where he was put off was dangerous or that he was put off the train while it was in motion; but as the evidence was all heard on the trial, we have considered the case on the merits, and on the return of the case to the circuit court the plaintiff will be allowed to amend his petition."

It will be observed that the court said that there was sufficient evidence to take the case to the jury on the theory that Setser was pushed from the train while it was in motion and in a deep cut near the mouth of a tunnel, where it was not safe to put off a person, but, that the pleadings did not authorize a recovery on these grounds. Therefore, it was indicated that on a return of the case the plaintiff might amend his petition and

set up as grounds of recovery the negligence in the two particulars named, and the amended petition which we have incorporated avers distinctly that Setser was kicked, pushed and thrown from the train while it was in motion, in a deep cut, near the mouth of a tunnel, at a late hour in the night—thus conforming in all respects to the direction given in the former opinion.

2. In the introduction of evidence, witnesses were allowed to state the age and condition of health of the deceased, the business he was engaged in, and the compensation he received. Every fact pertinent to his earning capacity was developed, but the court refused to permit the defendant to show that the deceased did not leave any estate, as it avowed it could do by the witness who was asked what estate he left. It is now claimed that it was prejudicial error to exclude this evidence. We think evidence of the amount of estate he possessed was a competent circumstance tending to show his habit of saving, and thus to illustrate in some degree at least the loss to his estate by his death; but, in view of the other evidence introduced as to his age, health, habits and earning capacity, we do not regard the rejection of this evidence as material or important, or consider that its omission had any effect in determining the amount of the recovery. Aside from this, Setser was an infant, and as his father was entitled to all his earnings he could not be expected to have any estate.

3. William France, introduced as a witness for the plaintiff, after testifying that he was on the steps of the car when the deceased was put off and was requested by the conductor to step out of the way while they were putting him off, and that he saw him shoved off and strike the bank and roll back under the cars, was asked:

"Did you say anything to the conductor or hear the conductor say anything? A. He said 'if he gets back on here, put him off.' I said 'you need not expect him to get back on here.' Q. Who did you speak to? A. To the conductor; he was talking about the man put off getting back on. Q. Who did he speak to? A. To the man who was out there. I said 'how do you expect him to get back on here after you have done rolled him out and back under the train?' Q. What was it the conductor said that caused you to make that remark? A. He said 'if he gets back on here any more put him off.' Q. How soon after it, was it that you made that remark to him? A. Two or three seconds."

It is insisted that the testimony of this witness in so far as it related to what he said to the conductor was incompetent, and the ruling of this court in L. & N. R. R. Co. v. Cox, 145 Ky., 716, is relied on in support of the objection. The facts, however, of this case on the point under consideration are so different from those in the Cox case that the latter case does not support counsel in his position that the admission of the declarations of France was prejudicial error. The remarks of France were addressed directly to the conductor who was immediately in his presence and hearing and was merely a declaration on his part of what he had seen happen a moment before. He testified, as it was of course admissible he should, that he heard what the conductor said, and saw the things happen referred to in his remarks to the conductor. We are unable to perceive how the rights of the appellant railroad company could have been in any manner prejudiced by the admission of the evidence of his declarations in the presence of the conductor, especially in view of the fact that the acts of negligence upon which the action was grounded had already happened, and France was only giving the reason why Setser would not get back on the train.

4. It is insisted that the evidence offered by the plaintiff in rebuttal was inadmissible. This objection is made upon the ground that this evidence should have been introduced in chief and not in rebuttal. There was really no new matter introduced in rebuttal. The evidence in rebuttal merely tended to bring out a little more clearly facts testified to by the witnesses in their examination in chief, and in this way served to contradict the evidence introduced in chief by the defendant. After reading the evidence, we do not think the court committed any error in allowing the evidence in rebuttal.

5. Ike Vanbever, a witness for the plaintiff, testified that he was a deputy sheriff of Bell county, and that as the conductor was taking Setser out of the car to eject him, he (the conductor) remarked to Vanbever that he could come along; but that he did not do so; nor did he go out on the steps of the car at the time Setser was put off. He was asked these questions for the purpose of contradicting the conductor, who testified that Vanbever assisted him in putting Setser off. On the cross-examination of Vanbever he was asked if he did not make and sign, a few days after Setser was killed, the following statement:

"I was on the train Saturday night, April 21st, and assisted the conductor in trying to quiet him; he was very drunk, and seemed to be hunting trouble; he promised me he would behave himself, and in a few minutes he began a fight; it was a general fight and Setser was the principal disturber. I followed the conductor Doody and the flagman to the door, and the conductor pulled the train down, and I am positive that the train came to a stop. I never saw the conductor or any one else strike or in any way mistreat Setser; and I never saw him after they put him off. I think the conductor did just as he should have done in putting him off. I don't know where he was put off. It was somewhere between Excelsior and Ferndale. This was a drunken crowd, I never saw this party before."

On objection by counsel for plaintiff, the court excluded this statement. Evidently the court excluded the statement because it did not contradict or serve to contradict any evidence that Vanbever gave while on the witness stand. If Vanbever had given any testimony in conflict with his written statement it would undoubtedly have been competent for the purpose of impeaching the testimony of Vanbever by showing the conflict between his evidence on the trial and his statements made before the trial. But, as Vanbever did not make any statement on the trial in conflict with his written declaration, it was not error to refuse to permit it to be introduced as evidence.

6. Another ground for reversal presented is that the verdict is not sustained by sufficient evidence; but this objection is not well taken. There is of course great conflict in the testimony of the witnesses for the plaintiff on the one side and the witnesses for the defendant on the other. If the testimony of the trainmen and other witnesses in behalf of the company should be accepted as true, the employes of the company were not guilty of any negligence in ejecting Setser at the time and place and in the manner in which he was ejected. On the other hand, if the statements of the witnesses introduced for the plaintiff should be accepted as true, the servants of the company acted with gross negligence and in reckless disregard of the life of Setser in ejecting him from the train while it was in motion at the place and in the manner testified to. It was for the jury to say which version of the affair they would believe. They saw proper to believe the testimony of the witnesses for the

plaintiff, several of whom testified that Setser was pushed or thrown from the train while it was in motion and in a deep cut, and the evidence of the witnesses for the plaintiff was amply sufficient to authorize the jury to find a verdict in favor of the plaintiff.

7. In a former opinion the court indicated the instructions that should be given on a re-trial, and the court did instruct the jury in conformity with the direction given. All the issues in the case upon which the court was told to instruct the jury were submitted in appropriate instructions. The instructions given put in simple and easily understood language the law of the case, and, as the evidence on the last trial was the same in substance as on the first, no other instructions than those directed should have been given. The law of this case was settled in the former opinion, and the lower court in instructing the jury simply followed the law as laid down in the former opinion.

8. The next objection relates to the argument of counsel for appellee. The conductor of the train testified that he had run over the road so often that he knew every part of it thoroughly well, and even in the night could tell where he was from his familiarity with the objects on the road. In commenting on this evidence counsel said that "if he knew the road that well, he knew where he was putting him off, and he knew that in one minute's time he would have had him at the station at Ferndale to put him off at a safe place. This ordinary care is charged upon Mr. Doody, and I contend that if he knew that road, it would have suggested to him that he could have surely bore with him a little longer and let him off with the other passengers at Ferndale station." The criticism of this argument finds its basis in the fact that in the former opinion the court said that under the facts proven the conductor was not required to delay putting the deceased off until the train reached the next station, but had the right to put him off at the time he did, using ordinary care to select a reasonably safe place. And, it is said that notwithstanding this statement of the court, counsel in the argument complained of told the jury that ordinary care required the conductor to postpone the ejection until Ferndale station was reached. We do not think the argument complained of was objectionable. In the instructions the jury were told that the conductor had the right to put Setser off, but that in doing so it was incumbent upon him to use

ordinary care for his safety, that is, such care as an ordinarily careful person would usually exercise under similar or like circumstances. And counsel in argument was merely combatting the proposition advanced by the witnesses for the company that in putting Setser off the conductor did exercise ordinary care for his safety.

9. The last ground for reversal urged is that the verdict is excessive. In instruction No. 2 the court told the jury that "if they believed from the evidence that the said conductor put the deceased off in a cut, where it was not reasonably safe to put off a man in the ordinary possession of his faculties and by reason of this, deceased lost his life, then you will find for the plaintiff." And in instruction No. 3, "if you shall believe from the evidence that the conductor upon said train or brakeman by his directions pushed the deceased from the steps of the car while the train was in motion, and thus caused him to fall under said train and be killed, then you will find for the plaintiff." And in instruction No. 4, "if you find for the plaintiff under instruction No. 2, you will give him in damages such a sum as you may believe from the evidence will fairly and reasonably compensate the estate of the deceased for the destruction of his power to earn money; and if you shall find for the plaintiff under instruction No. 3, then you will give him such a sum in damages as you may believe from the evidence will fairly and reasonably compensate the estate of the deceased for the destruction of his power to earn money, and you may in your discretion award such further sum by way of punitive damages as in your judgment is right and proper, provided your whole finding does not exceed $50,000.00, the sum sued for."

It will be observed that under these instructions the jury were authorized to award only compensatory damages if they believed the state of facts existed as set out in instruction No. 2; but if they believed the state of facts existed as set out in instruction No. 3, they might in addition to compensation award exemplary damages. As before stated, the evidence for the plaintiff showed that the deceased was pushed from the steps of the car while the train was in motion, and that he fell under the train and was killed, and it is entirely fair and reasonable to assume that when the jury came to consider their verdict and the sum that should be assessed they reached the conclusion that the death of the deceased was brought about in the manner stated in in-

struction No. 3, and, this being so, they were authorized in addition to compensation to give exemplary damages. What amount of damage the jury allowed as compensation and what amount they awarded as exemplary, the finding of the jury does not show. As compensation alone, it might be said that $20,000 was excessive, and that $20,000 as exemplary damages alone would be excessive; but we are not prepared to say under the facts of this case—assuming that the death of Setser was caused by his ejection from the train in the manner stated in instruction No. 3, that the amount awarded both as compensatory and punitive damages was so excessive as to warrant us in saying that it was given under the influence of passion or prejudice on the part of the jury. The deceased was a young man only twenty years of age, in good health, and earning some $2.50 a day. Mere compensation alone would entitle his estate to quite a large sum of money, but when there is added to this the exemplary damages that the jury were authorized to award, if they believed he was thrown from the moving train, the amount is not beyond the bounds of reason. As we have frequently said, there is no standard by which to measure with even reasonable accuracy the amount of damages that should be awarded in cases like this, and we have never felt disposed to interfere with the finding of a jury unless the assessment appeared so grossly excessive as to leave the conviction that it was the result of passion or prejudice. It is true $20,000 is a large sum of money to allow as damages for loss of life. But, if the deceased was pushed or thrown from the train by the conductor in the manner and at the place testified to by the witnesses for the appellee, then his death was the result of such wilful wrong-doing on the part of the conductor as demanded the infliction of heavy exemplary damages by way of punishment.

Wherefore the judgment is affirmed.