## Hines, Successor to Wm. G. McAdoo, Director General of Railroads v. Gaines.

(Decided June 24, 1921.)

### Appeal from Hart Circuit Court.

1. Railroads—Domicile.—Appellee, who had left his home in Hart county in 1908 at the age of 24 and gone to Alabama to work for a railroad company, and worked there almost continuously until 1918, when he was injured, remaining all the time unmarried, and during practically all that time being engaged as a member of a construction crew, which lived in boarding cars and went from one point to another on a railroad line, and remained only a short time at any given place, never acquired any legal domicile in the state of Alabama, and Hart county, Kentucky, to which he frequently made visits, and which he claimed as home, was his legal residence, it being the theory of the law that a man must have a legal residence at some place.

2. Railroads—Domicile Pleading.—The plaintiff's petition having alleged Hart county as the county of his residence, a special plea to the jurisdiction filed by the defendant, affirmativly alleging that he was a resident of the state of Alabama, was merely an affirmative denial of the plaintiff's allegation.

3. Trial—Evidence—Scintilla of Evidence.—Although a verdict may be flagrantly against the evidence, it is sometimes proper, under our scintilla rule, to submit it to the jury.

4. New Trial—Evidence.—Evidence examined and held to be flagrantly against the weight of the evidence, and that it was the duty of the trial court to have granted a new trial.

BENJ. D. WARFIELD, SIMS, RODES & SIMS and WATKINS & CARDEN for appellant.

CHARLES CARROLL, M. T. MORAN and LARRIMORE & WHEELER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee was reared and lived with his mother and father at their home in Hart county, Kentucky, until the year 1908. At that time he was 24 years of age, and went to the state of Alabama to work for the Louisville & Nashville Railroad. He remained in Alabama until June, 1918, at which time, while riding on a freight train, he was either knocked or kicked therefrom, or fell therefrom, between the cars, which ran over his legs and necessitated their amputation.

This is an action instituted in the Hart circuit court of this state by him for damages resulting from such injury wherein he alleges, in substance, that while so riding on the freight train in Alabama he was either kicked or knocked therefrom by a brakeman assisting in the operation of the freight train, and that his injuries resulted therefrom.

The answer controverted the material parts of the petition, and, in addition, relied upon the alleged contributory negligence of the defendant.

On a trial a verdict was returned for the plaintiff for six thousand dollars, upon which judgment was entered, and the defendant's motion for a new trial having been overruled, he has appealed.

The original petition alleged that the plaintiff was at the time, and had been continuously for ten years, a resident of Hart county, Kentucky, and the defendant, before filing his answer to the merits, filed a special plea to the jurisdiction of the court wherein it is alleged that the plaintiff did not reside in Hart county, Kentucky, and did not reside in said county on the day of the injury for which he sued, and had not so resided at any time in the past fifteen years prior to bringing the action, and relied upon the act of Congress providing for the Federal control of transportation systems, and providing that all such carriers while under such Federal control should be subject to all liabilities as common carriers whether arising under state or Federal laws, or at common law, except in so far as might be inconsistent with the provisions of that act or any act applicable to Federal control, or with any order of the President. He then sets out two orders, General Order No. 18, dated April 9, 1918, and General Order No. 18A, dated April 18, 1918, issued by the Director General of Railroads under the authority of the President. Said two orders are as follows:

"Washington, April 9, 1918.

"General Order No. 18.

"Whereas the act of Congress approved March 21, 1918, entitled 'An act to provide for the operation of transportation systems while under Federal control,' provides (section 10), 'That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or Federal laws or at common law; except in so far as may be inconsistent with the provisions of this act or with any order of the President, . . . But no process, mesne or final, shall be levied against any property under such Federal control; and

"Whereas it appears that suits against the carriers for personal injuries, freight, and damage claims are being brought in states and jurisdictions far remote from the place where plaintiffs reside or where the cause of action arose, the effect thereof being that men operating the trains engaged in hauling war materials, troops, munitions or supplies, are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes a week or more; which practice is highly prejudicial to the just interests of the government and seriously interferes with the physical operation of the railroads; and the practice of suing in remote jurisdictions is not necessary for the protection of the rights or the just interests of plaintiffs;

"It is therefore ordered, That all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resides, or in the county or district where the cause of action arose.' "

"April 18, 1918.

"General Order No. 18A.

"General Order No. 18, issued April 9, 1918, is hereby amended to read as follows:

" 'It is therefore ordered that all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resides at the time of the accrual of the cause of action or in the county or district where the cause of action accrued.' "

The purpose of these two orders, as stated in the first one, was to localize so far as might be practicable actions

against carriers, so that witnesses in such actions who might be engaged in either the transportation of soldiers or of war materials, might not be called as witnesses to distant points and thereby be taken from their important duties as employes in such transportation; but the right of a litigant to bring his action in the county or district where he resided at the time of the accrual of his cause of action was not attempted to be restricted or limited, and the whole question in this case on this branch is whether the plaintiff was at the time of the accident a resident of Hart county, Kentucky.

The facts are that for some time before 1908 appellee, then admittedly a resident of Hart county, had been locally employed by the Louisville & Nashville Railroad Co., and lived with his father and mother at their home in that county and was unmarried; that in 1908 he went to the state of Alabama under employment with that company and remained in that state under such employment practically all of the time between that and June, 1918; that during the period he was in Alabama, or a very large part of it, he was engaged as a member of a construction crew, and that such crews lived in what are known as boarding cars, and that they had no fixed habitation but would go from one point on the line to another, and remain only a short time at any given place, and that this was the nature of his work and employment practically all the time he was employed in the state of Alabama, although for short periods upon one or two occasions he was engaged in work for that company in other capacities, but he never remained at any one point in the state of Alabama for any great length of time or acquired a fixed habitation therein.

It likewise appears that a year or so after appellee went to Alabama his mother died, and thereafter his father's home was broken up and appellee's younger brothers and sisters went to live with their married sister a short distance from their father's home, and in Hart county; it likewise appears that appellee would make such visits to Hart county during his stay in Alabama as his work would permit, going back there sometimes once a year and sometimes oftener, and at certain other times not so often, and that when he did go back he would remain only a day or two on some visits and longer on others; that, after his mother's death and the breaking up of his father's home, he treated and considered his married sister's home, the place where his

younger brothers and sisters were living, as his own home, and that he often sent money to his married sister to aid in the keeping up and maintaining that home; that he remained unmarried during his whole stay in the state of Alabama.

It is the theory of the law that a man must have a legal residence at some place, and it is clear from the evidence on this issue that the appellee never acquired at any point in the state of Alabama a legal residence, or any such domicile he might have called home. Under the facts if his sister's home was not his legal residence, then he had none; and we therefore hold that a fair interpretation of the two orders quoted gave him the right to institute and maintain this action in Hart county, the only home he had. This question, however, was submitted to the jury, although there was no real issue about the facts, and of this action appellant cannot complain.

It is complained, however, that the allegations in the special plea to the jurisdiction were denied only by a reply filed in the clerk's office, but which was never filed by any order of court, and that therefore the allegations of that plea stand confessed and, that being true, the motion for a peremptory should have prevailed.

If the allegations of the plea to the jurisdiction had gone to matter not mentioned in the plaintiff's petition, and had been intended to defeat the jurisdiction upon new facts not referred to in the plaintiff's petition, there would be much force in appellant's contention; but the plaintiff in his petition had already alleged that he was a resident of Hart county and that he was such resident at the time his cause of action accrued, and the allegations of the defendant's plea, setting up in detail facts which were relied upon to show that he was not such resident, must be treated as an affirmative denial of what the plaintiff had already alleged.

It is further contended that the motion for a peremptory should have been sustained on the evidence. But manifestly this cannot be sustained under our liberal rules requiring the submission of questions of fact to the jury, for such an instruction is not justified unless every fact shown in the plaintiff's evidence, as well as all reasonable inferences and deductions fairly to be drawn therefrom, can be admitted as true. In this case the plaintiff stated in substance, that while he was sitting on a tank car of the moving freight train, a brakeman of the train, with an L. & N. lantern on his arm, came up to

him and ordered him to get off the train, and kicked him in the side and caused him to fall off; he further said that he did not know the name of the brakeman, but that he had often seen him and knew he was a brakeman, and had seen him before at work on that train.

But it is said that even under such liberal rules requiring the submission of questions of fact to the jury, the unsupported testimony of the appellee is so discredited and overwhelmed by the whole of the other evidence in the case that the verdict is not sustained by sufficient evidence, and is flagrantly against the evidence, and should therefore have been set aside by the trial court and a new trial granted.

Subsection 6 of sec. 340 of the Civil Code authorizes the granting of a new trial by the trial court where the verdict or decision is not sustained by sufficient evidence.

This contention involves an analysis of the evidence, and that analysis will be approached at the outset with the admitted fact, that appellee's statement that he was kicked by a brakeman and thereby caused to fall from the moving train, is wholly unsupported by any other witness or by any fact or circumstance in the record.

The undisputed evidence is that appellee fell from the moving train only a short distance from a station called Georgiana between twelve and one o'clock at night, and that the train from which he fell did not stop at that station.

Appellant introduced on the trial seven witnesses who reached appellee just a short time after the accident, and while he was still in the railroad yards at the Georgiana station, and six out of the seven witnesses say that appellant then said, in substance, that he had been riding on a tank car of the freight train, and that he had gone to sleep and fallen off; and the other witness, Dr. Watson, who probably reached him a little later than the other six, says that he then stated to him that while riding on the tank car he had attempted to change his position and had fallen off.

It is argued, however, that appellee, at the time he is said to have made these statements, was in excruciating pain from his injuries just received and that they should not be given great weight for that reason; but it is sufficient to say in response to this that while appellee was in the hospital at Georgiana, and at a time when he was well on the road to recovery, he made, in substance, the same statements not only to Dr. Watson but to others

who called upon him there, and it is made clear in the evidence of Dr. Watson that at the time he reiterated these statements in the hospital he was perfectly at himself and free from the influence of any drugs.

In addition to this, it was testified by the conductor of the train that he knew nothing that night of any outsider or stranger being on his train, and that he did not throw off or kick off of that train the appellee, and that if any such thing was done it was done without his knowledge or information, and that the crew on that train consisted of Darby, the engineer, Butts, the flagman, and Leonard Johnson the brakeman, the latter colored.

The engineer, Darby, testified that he knew nothing of any negro being on that train that night or being injured by that train, and that he had no knowledge or information of the negro being kicked or thrown off.

Butts, the flagman, testified that he had no knowledge or information of any negro being on that train, or being forced or put or kicked off, and that if any such thing was done, he had not done it.

And the negro brakeman, Johnson, testified that he was at the time in the employ of the railroad company as extra brakeman, but did not remember whether he was running that week or not. The plaintiff had testified that the man who kicked him off was a white brakeman.

In addition to all this evidence, the appellant, on a motion for a new trial, filed the affidavits of Gatzie Smith, F. C. Webb, Marvin Deaton and Dr. W. E. Morris.

The affidavit of Gatzie Smith states that she is a practical nurse, and that appellee was brought to the hospital on the 5th of June, where she was engaged, and that he remained under her personal care for about 50 days, and that during that time she many times heard him say how his injuries were received, and that he always stated that he was riding on a tank car of a freight train and lost his hold and fell off of the train, and that she had heard him numerous times read letters written by him to his relatives in which he always stated that he received his injuries by falling off of a freight train.

F. C. Webb's affidavit states that he is a resident of Georgiana, Alabama; that he is a druggist, and often assisted Dr. Watson in emergencies, and that about one o'clock a. m. on June 5, 1918, by request he arose and went to the house where appellee was, and while the doctor was preparing to amputate his limbs witness

asked appellee his name and how he happened to get hurt, and he answered that his name was Mit Gaines, and that he was riding a tank car on a freight train and fell off; and that later that day he accompanied the truck which carried Gaines to Gatzie Smith's, and that Gaines repeated to the truck driver, in the presence of the witness, that he had fallen off of a freight train and received his injuries.

Dr. W. T. Morris states in his affidavit that he is a resident of Georgiana, Ala., and a practicing physician, and that he assisted Dr. Watson in amputating the limbs of Mit Gaines, and that he had examined said Gaines and during the examination had asked him his name and how the accident occurred, and that Gaines told him his name, and said he was riding on a tank car of a freight train, and that in attempting to change his position, he lost his hold and fell off; and that Gaines was at the time, in witness's opinion, in full possession of his mental faculties and knew what he was saying.

The affidavit of Marvin Deaton states that he was a resident of Georgiana Ala., and that he was employed by the Louisville & Nashville Railroad Co., and that the night of the accident he was working at the railroad shops at that place; that he heard the cries of some one in distress and went with others to the place whence the cries came, and that in his presence some one asked the man his name and how he happened to be hurt, and in reply he gave his name and said he was riding the freight train, and in attempting to change his position, he lost his hold and fell off.

So that we have, as opposed to the single and unsupported testimony of the appellee, the statement of eleven or twelve witnesses, undenied except by appellee, that at the time of the injury and shortly thereafter, appellee had made statements utterly inconsistent with and directly contrary to his statements under oath on the trial; that he had made practically the same statements not only to the persons who reached him soon after the injury, and who were strangers to him, but had subsequently, while in the hospital, and at a time when he was recovering from his injuries stated the substance of the same thing both to his doctor and to his nurse, while sustaining toward those two the intimate relation which grows out of the ministrations to suffering humanity by nurses and doctors. And it nowhere appears that he made any different claim or any different statement of

how the injury occurred to any person as long as he remained in the state of Alabama after his injury, which was approximately two months.

While the action of the trial court in submitting this case to the jury was proper under our scintilla rule, yet, upon the motion for a new trial, when it appeared, as it seems to us, that the verdict was clearly and flagrantly against the weight of the evidence, the court should have, in the exercise of its right under the section of the Code referred to, granted the appellant a new trial. L. & N. Railroad Co. v. Baker's Admr., 183 Ky. 795.

The judgment is reversed, with direction to grant appellant a new trial, and for further proceedings consistent herewith.