## Louisville & Nashville Railroad Company v. Rowland's Administrator.

(Decided February 12, 1929.)

842

WOODWARD, WARFIELD & HOBSON, HUNT, NORTHCUTT & BUSH, ROSE & STAMPER, CHARLES S. LANDRUM and ASHBY M. WARREN for appellant.

J. M. McDANIEL, BEATTY & BEATTY, J. K. ROBERTS and W. E. SETTLE for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Martha Rowland became a passenger on a train of the Louisville & Nashville Railroad Company at Heidelberg, in Lee county, about 3 p. m., on June 10, 1924. In mounting the steps of the coach provided for passengers, she fell and sustained injuries to her knee and side, but continued on her journey to Beattyville, a distance of 6 miles, and kept an appointment with a dentist. She returned that same evening, and was assisted from the depot to her home. She was confined to her bed thereafter, and was under the care of a physician until August 4th, when she was taken to Lexington. Not being able to get the desired attention at Lexington, she was taken to the Gibson Hospital at Richmond, Ky., where she remained until August 8, 1924, when she died.

Her administrator instituted this action to recover damages for her death, alleging that she was injured as a result of the defendant's negligence, and that her death resulted from the injuries. At the first trial the plaintiff recovered a verdict for $15,000, but this court reversed the judgment and ordered a new trial. Louisville & N. R. Co. v. Rowland, 215 Ky. 663, 286 S. W. 929. A retrial resulted in a verdict and judgment for $12,000 in favor of the plaintiff. A new trial was demanded and denied, and the railroad company has prosecuted the present appeal.

It is now insisted (1) that a peremptory instruction in favor of the defendant should have been given; (2) that the verdict is not sustained by the evidence, but palpably against the weight of it; (3) that counsel for appellee misbehaved; (4) that incompetent evidence was admitted; (5) that additional instructions offered by appellant were improperly rejected; and (6) that the verdict is excessive.

The argument of the appellant for a peremptory instruction is grounded upon two contentions. It is first said that there was no testimony tending to prove a neg-

ligent injury, and then that the injuries sustained by Mrs. Rowland were not the proximate cause of her death. The rule is that a case must be submitted to the jury, if there is any evidence tending to sustain the cause of action alleged. In determining the propriety of taking a case from the jury, the facts proven and the permissible inferences reasonably deducible therefrom must be accepted as true. Cincinnati, N. O. & T. P. R. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200; Hines v. Gaines, 192 Ky. 198, 232 S. W. 624; Terrell v. Southern R. Co., 225 Ky. 645, 9 S. W. (2d) 993; Slusher v. Lawson, 198 Ky. 358, 248 S. W. 888.

The uncontradicted evidence in this case tended to show that the steps provided for the use of passengers in mounting and alighting from the coaches were unreasonably high, and that because of that breach of duty on the part of the carrier Mrs. Rowland fell, and thereby sustained the injuries which ultimately ended her life. It is true that one of plaintiff's witnesses was impeached in so far as her moral character was concerned; but there was contradictory testimony, and it was proven by numerous witnesses that she was present when the accident occurred. But, in any event, the credibility of the witnesses was for the jury. Chesapeake & O. R. Co. v. Salyers, 187 Ky. 144, 218 S. W. 474; Louisville & N. R. Co. v. Quinn, 187 Ky. 607, 219, S. W. 789; Louisville & N. R. Co. v. Spicer, 187 Ky. 601, 219 S. W. 1047. It is the rule in this state that, when the steps provided for passengers to use in entering and leaving the cars are so unreasonably high as to be dangerous to a person attempting to use them, it constitutes a negligent breach of the carrier's duty. Louisville & N. R. Co. v. Dyer, 152 Ky. 264, 153 S. W. 194, 48 L. R. A. (N. S.) 816; Louisville & N. R. Co. v. Bowman, 208 Ky. 39, 270 S. W. 471. The steps involved here were shown by the evidence to be 24 inches, or perhaps 32 inches, from the ground, and no stool or other appliance was provided to obviate or alleviate the danger. It is plain, under the authorities cited, that the proof made out a case of negligence, and the court properly submitted that issue to the jury.

But appellant insists that, notwithstanding there was sufficient evidence of negligence to carry the case to the jury, there was nevertheless no sufficient evidence that Mrs. Rowland was injured as a result thereof, or that the injuries were the direct cause of her death. There was ample evidence to show that the injuries were sustained.

One witness, Mrs. Poe, testified that she saw Mrs. Rowland fall on her knee and side, and heard her exclaim: "Oh, Lord! I am killed!" And further that she saw her put her hand on her side and groan, and, in response to an inquiry addressed to her, she expressed a belief that her ribs were broken. The same witness also testified that the expression on the face of Mrs. Rowland indicated pain and suffering. Miss Mary Quillen was alighting from the train, and met Mrs. Rowland and another large woman, who was identified as Mrs. Poe, entering the car. Mrs. Rowland was holding her left side about her heart, and said that she had just fallen and almost killed herself. The testimony of Miss Quillen was recited in the former opinion and its competency expressly affirmed. Mrs. Howell was with Mrs. Rowland from the time of her injury, saw her limping, decline to eat any supper because of her suffering, and saw her in the depot at Beattyville crying from pain. Mrs. Rowland required assistance to get on the train at Beattyville, and from it at Heidelberg. She could not bear a touch to her injured limb, and the bruise on her side was causing discomfort.

Dr. Evans, local surgeon for the appellant, was called to see the woman on the next day, and treated her continuously until August 4th, when she was taken to Lexington. He testified that her left knee was bruised and swollen and that her left side was hurt. He put adhesive tape around her chest covering a space six inches in width from her spine to the sternum. He visited her frequently, until she went to Lexington, and was the only doctor in attendance. On two occasions he had been sent for on account of smothering spells of the patient, but on his arrival these attacks had disappeared. He examined her with a stethscope, but was unable to detect any diseased or disordered condition of the heart. So far as he could determine, she was suffering solely from the injuries sustained, and he treated her only for the injuries. The swelling and discoloration of the limb had subsided somewhat, but, being unable to walk, he had her put on a cot for the journey to Lexington. Several of the neighbors called to see Mrs. Rowland during her confinement after the accident, and explained the appearance of her limb as badly swollen and discolored, some of them describing it as black, some as purple, others as green, and all of them saying she was compelled to prop it on a pillow. The witnesses agree that she was unable to walk after the accident, and remained in her bed until she made the trip

to Lexington and Richmond. She was unable to turn in bed, unless assisted. Some women testified that, before Mrs. Rowland could be taken to Lexington, it was necessary to apply hot bandages to her limb in order to reduce the swelling and to relieve its extreme coldness. One witness, who visited Mrs. Rowland after the injury, saw her spitting up blood.

A physician who had known Mrs. Rowland for 30 years, and had been her family physician for 20 years, testified that he had examined her for heart trouble and found absolutely no disease of the heart. He also stated that she was a large woman, weighing over 200 pounds, and was about 5 feet 11 inches tall. He further stated that she was not so fat or full-breasted as to prevent a successful examination with the stethoscope. The doctor explained the occasional sinking or smothering spells as the effect of indigestion and improper dieting, which disappeared under correct treatment. The physician expressed the opinion that the death of Mrs. Rowland was traceable alone to her injuries. There was uncontradicted testimony that prior to the accident Mrs. Rowland was a robust, well, and active woman, performing regularly the numerous and onerous duties of a housekeeper in a country village. It is clear that the evidence was sufficient, if unexplained, to establish that the death of the woman was caused by the injuries sustained in the accident, and the court could not, in the face of such testimony, direct a verdict for defendant. The concurring verdicts of two juries fortify this conclusion. Southern Ry. in Kentucky v. Forsythe's Ex'rs, 118 Ky. 764, 82 S. W. 385, 26 Ky. Law Rep. 643.

■ But it is argued that the evidence for the defendant completely disproved the plaintiff's evidence, and established that the woman died of heart disease, and not from her injuries. It is said that the finding of the jury to the contrary was palpably against the evidence, and for that reason a new trial should be awarded. Civil Code, sec. 340, subsec. 6, authorizes the court to grant a new trial when the verdict or decision is not sustained by sufficient evidence. This does not mean that the court will set aside a verdict merely because the preponderance or weight of evidence is on one side, or even because of a numerical superiority of witnesses. Louisville Water Co. v. Phillips, 139 Ky. 614, 89 S. W. 700, 28 Ky. Law Rep. 560. A verdict can be set aside on that ground only when it is flagrantly against the weight of the evi-

dence. Louisville & N. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S. W. 674; Metropolitan Life Ins. Co. v. Penick (Ky.) 12 S. W. (2d) —, decided Jan. 22, 1929; Hines, Director General, v. Gaines, 192 Ky. 198, 232 S. W. 624; Chesapeake & O. R. Co. v. Johnson, 151 Ky. 809, 152 S. W. 962; Cincinnati, N. O. & T. P. R. Co. v. Zachary's Adm'r, 106 S. W. 842, 32 Ky. Law Rep. 678; Louisville & N. R. Co. v. Daniel, 122 Ky. 256, 91 S. W. 691, 28 Ky. Law Rep. 1146, 3 L. R. A. (N. S.) 1190; Louisville & N. R. Co. v. Daniel (second appeal) 104 S. W. 344, 31 Ky. Law Rep. 944. The evidence for the defendant consisted of a certified copy of an alleged death certificate, purporting to have been issued by Dr. W. M. Gibson, the testimony of Dr. Jones, the testimony of several witnesses to the effect that Mrs. Rowland had smothering or sinking spells, the expert testimony of Dr. Scott, an eminent specialist, and the impeachment of the plaintiff's witness, Mrs. Poe, already mentioned. The death certificate, purporting to have been signed by Dr. Gibson, certified that he had attended the deceased from August 4, 1924, to August 8, 1924, and that her death occurred on August 8, 1924, at 4 p. m., and gave the cause of her death as "mitral insufficiency—heart disease, duration six years," On the former appeal it was pointed out that a certified copy of a death certificate is by statute made prima facie evidence of the facts therein stated (Ky. Stats., sec. 2062a21), and in the opinion it was said that the plaintiff in order to prevail, must overcome the fact established prima facie by the death certificate. On the second trial Dr. Gibson testified that he did not sign the alleged death certificate, or authorize any one to sign his name thereto. He further testified that, when Mrs. Rowland came to the Gibson Hospital, he did not make a complete examination; but, as her case was one of physical injury, he deferred the examination to have the benefit of an X-ray picture. While waiting for the X-ray picture to be taken, the patient died, and no X-ray or other examination was ever made. He said further the woman's injured leg was badly swollen, being twice as large as the opposite limb. He did not know anything of the condition of her heart, and did not make a statement at any time to anybody that Mrs. Rowland had heart trouble. The evidential value of the death certificate was thus completely overthrown.

It is true that Dr. Jones testified that he signed Dr. Gibson's name to the death certificate, and that he was

authorized to do so over the telephone; but the jury had a right to believe Dr. Gibson, rather than Dr. Jones. The circumstances tended to justify acceptance of Dr. Gibson's testimony, in preference to that of Dr. Jones. Dr. Jones himself testified that he did not put in the death certificate that the duration of the heart disease was six years, or that he was so authorized, and how that got in the certificate is not explained by the evidence. There are also material contradictions in Dr. Jones' own testimony, which challenged his credibility. He testified that he was authorized to examine Mrs. Rowland by Dr. Gibson, who was ill and in bed. Dr. Gibson denied that, stating that he was not in bed, and did not request or advise any examination of her by Dr. Jones, but had attended to her himself, and was merely awaiting the return of the X-ray man to complete the examination. He further testified that he was not sick in bed, but was going about his work and attending to the business of the hospital. Dr. Jones also testified that, before the death of Mrs. Rowland, he had examined her with a stethoscope and detected acute sounds in the region of the heart, which indicated she was suffering from mitral insufficiency. If Dr. Jones made such examination, and thus acquired knowledge of the existence of mitral insufficiency, he knew the cause of her death, and he was the only person who did know it. He does not say that he ever told any one, and there is no testimony from any other source that the patient had mitral insufficiency; yet Dr. Jones testified that, when he was called upon at night to sign the death certificate, which he had no right to sign, he did not know what had caused the death of Mrs. Rowland. For that reason he said he called Dr. Gibson on the telephone to ascertain the cause of her death. It was then he said that Dr. Gibson authorized him to sign the death certificate and to put mitral insufficiency therein as the cause of death. If Dr. Gibson is to be believed, Dr. Jones' testimony is wholly discredited, and the jury had a right to accept the testimony of Dr. Gibson, rather than that of Dr. Jones. Dr. Jones was also contradicted by two other physicians who had made examinations with a stethoscope and had been unable to detect any heart disease.

There is the additional circumstance, related by Miss Scovill, that on Friday, just before her death, Mrs. Rowland said that, although she had been at the hospital four days, she had not been examined, and would not be

until the following Monday. That testimony was brought out by the defendant, and it corroborated Dr. Gibson in the statement that no examination of Mrs. Rowland had been made. It thus appears that Dr. Jones was not only contradicted on many points, but discredited, and if the jury did not accept his statements, there was no evidence whatever that Mrs. Rowland had mitral insufficiency. But that is not all the evidence on the subject of heart disease. Dr. Scott expressed the opinion that Mrs. Rowland died of heart disease. He did not support the theory of Dr. Jones, but formed an independent judgment from the testimony of witnesses as to the sinking or smothering spells which the witnesses mentioned. He further expressed the opinion that the symptoms described indicated a diseased condition of the heart, which a stethoscope would not disclose. He testified that Mrs. Rowland remaining in bed and taking rest provided the most beneficial treatment for heart disease, and he did not explain why she did not improve if heart trouble was the source of her suffering rather than the injuries.

The testimony of the other doctors was in direct contradiction of Dr. Scott, and the jury is not compelled to accept the opinion of an expert, if the circumstances and other evidence furnish a conflict (Security Life Ins. Co. v. Black, 193 Ky. 849, 237 S. W. 1059), and especially is this true where other evidence equally credible creates the conflict. Expert evidence, at most, is entitled to but little weight, and, while we are necessarily dependent upon it in many instances, it must be received with caution and scrutinized with care. Kentucky Traction & Term. Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854. Miss Scovill testified that she had been acquainted with Mrs. Rowland for many years. She said that, when Mrs. Rowland lived in Owsley county, several years before her death, she could not walk very far because of her great weight and shortness of breath resulting from exertion, and she refused to go places because of that inconvenience. Another witness testified that Mrs. Rowland refused, a few days before she was injured, to attend a social gathering, stating that she was short of breath when she exerted herself, and that her family preferred for that reason that she should not go out unnecessarily. Two or more witnesses testified that Mrs. Rowland had smothering or sinking spells after the accident. Dr. Mehaffey, testified that the sinking spells were mere incidents of exertion by a corpulent woman, and were not

symptoms of heart trouble in her case; that she suffered from indigestion and fullness, because of improper dieting, and that she responded to treatment therefor, which demonstrated that his diagnosis was accurate and his treatment efficacious.

It will thus be seen that there is no preponderance of the evidence in favor of the defendant. The basis for the expert opinion of Dr. Scott was shown not to exist, if the jury accepted the evidence to that effect. The case presents a direct conflict of evidence, and when the fact is considered that Mrs. Rowland, before the accident, was a very active woman, performing all of her household work, and the washing, ironing, gardening, marketing, and the numerous other things shown, all requiring exertion, there is no room to say that the finding of the jury was not sustained by the evidence. There was abundant evidence to support the verdict of the jury, and the court did not err in refusing to set it aside on that ground. Castleman v. Littrell, 167 Ky. 736, 181 S. W. 336.

■ The misbehavior of counsel for the plaintiff complained of consisted of some questions propounded by him to the witnesses which the court ruled were incompetent. There was no such incessant interrogation on forbidden subjects as to amount to misconduct. The court rigidly confined counsel for the plaintiff to his rulings on the admission of evidence, and the record does not show any studied effort on the part of counsel to get before the jury improper or incompetent testimony. The rule announced by the authorities relied upon is that, if counsel knowingly and persistently asks incompetent questions after the court has ruled and admonished counsel to desist from a particular line of interrogation, it may so impress the minds of the jury as to amount to prejudicial error. Louisville & N. R. Co. v. Reaume, 128 Ky. 90, 107 S. W. 290, 32 Ky. Law Rep. 946; Louisville & N. R. Co. v. Payne, 133 Ky. 539, 118 S. W. 352, 19 Ann. Cas. 294; Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683; Dorsey v. Proctor, 207 Ky. 385, 269 S. W. 316.

But we find no instance in this record to indicate a persistent intentional attempt on the part of counsel to subvert the recognized rules of practice. It is the province of counsel to ask questions, and the duty of the court to rule thereon, and reversible error may not be predicated on the presence of several incompetent questions in a record, when the trial court ruled correctly thereon. It

is only when there is a persistent effort, in disregard of the ruling of the court, for the purpose of influencing the jury, that a new trial may be ordered on that ground. Stewart v. Commonwealth, 185 Ky. 40, 213 S. W. 185; Shields v. Rowland, 151 Ky. 140, 151 S. W. 408.

■ It is argued that incompetent evidence was admitted. Numerous instances are cited, and to discuss each of them would extend this opinion beyond reasonable bounds. It is sufficient to say that there is no substantial basis for the complaint. The criticism of the testimony of Dr. Mehaffey is based upon the theory that he was purely an expert witness on a hypothetical case, not fully developed as the basis for his opinion. Dr. Mehaffey knew the patient for 30 years, and had been the family physician for 20 years, and while some questions were addressed to him as an expert, yet his testimony as a whole showed complete knowledge of the subject-matter of the investigation, and his opinions were admissible, even if the expert questions were technically inadequate. It is apparent, however, that the questions addressed to him were sufficient, and, if the defendant desired an opinion with additional elements to be introduced by the defendant, the opportunity was presented to it upon cross-examination of the witness. The plaintiff is entitled to the expert's opinion upon the theory of the case relied upon by him. It is the privilege of the defendant to supplement the evidence of the plaintiff by facts proven for the defendant, and obtain the expert's opinion on the whole. Dr. Mehaffey was qualified from personal knowledge, supplemented by information as to the injury, to express an opinion as to the cause of death. Aetna Life Ins. Co. v: McCullagh, 195 Ky. 136, 241 S. W. 836. Hypothetical questions may be based on the plaintiff's proof alone, and if the defendant desires the benefit of subsequent proof, it should be incorporated in a proper question. Madison Coal Corp. v. Altmire, 215 Ky. 283, 284 S. W. 1068. We find no prejudicial error in the admission of evidence for the plaintiff.

■ Appellant insists that some additional instructions offered by it should have been given. One of the offered instructions was to the effect that, if Mrs. Rowland's fall was caused by the wet and slippery condition of the steps, she could not recover, and the other was to the effect that it was not the duty of the defendant to have an employee at the steps to assist passengers, or to provide a stool for that purpose. The opinion on the first

trial expressly approved the instructions, and that opinion constituted the law of the case. While the witnesses in some respects were different on the last trial, the facts were in substance the same (Johnson v. Com., 225 Ky. 413, 9 S. W. (2d) 53), and there was no room for additional instructions (Muth v. Nunnelley, 202 Ky. 402, 259 S. W. 1011; Pickrell v. Wilson, 217 Ky. 430, 289 S. W. 1100; Kentucky Traction & Terminal Co. v. Downing, 159 Ky. 502, 167 S. W. 683). The law of the case, as applied in this state, requires that all questions in the record must be raised upon the first appeal and may not be raised thereafter. Cox v. Louisville & N. R. Co., 137 Ky. 388, 125 S. W. 1056. When a new trial is ordered, and the instructions are approved, either expressly or tacitly, they constitute the law of the case, which the trial court is bound to observe in succeeding trials. The instructions offered were, therefore, precluded by the opinion upon the former appeal.

We do not mean to infer that the instructions, in any event, should have been given. The court directed the jury to find for the defendant, unless they believed from the evidence that the plaintiff was injured as a direct result of the steps being unreasonably high, and the jury could not find for the plaintiff on any other ground. It was not necessary to instruct on supposititious conditions or situations in which the defendant was not liable, as it was all comprehended in the general instruction to find for the defendant, unless they found for the plaintiff on the single issue that was submitted. It is obvious that no error was committed in refusing to give the offered instructions. Matthews v. Louisville & N. R. Co., 130 Ky. 551, 113 S. W. 459; City of Providence v. Young (Ky.) 12 S. W. (2d) ——, decided February 5, 1929. Hobson, Blain & Caldwell on Instructions to juries, sec. 40, p. 21.

█ It is finally insisted that the verdict is excessive, and is so large that it must have been given under the influence of passion and prejudice. It was shown that Mrs. Rowland was 40 years of age, a strong, active, healthy woman, capable of doing, and actually performing, all her housework, gardening, and marketing. She was skilled in fancy work, and made money from the sale of her handiwork. In Louisville & N. R. Co. v. Engleman,

146 Ky. 22, 141 S. W. 375, decided in 1911, a verdict for $10,000 for death was sustained. The court said:

"Measured by the standard fixed by this court in some of its earlier opinions as compensation for the loss of a life negligently taken, it is possible that the sum awarded by the jury in this case might be looked upon as excessive; but in its recent decisions a much more liberal policy has been adopted, due, no doubt, to the increased cost of living and the diminished purchasing power of a dollar. Illustrating this fact are cited L. & N. R. R. Co. v. Taylor's Adm'r (104 S. W. 776), 31 (Ky. Law) Rep. 1143, where $10,000 was awarded as damages for the negligent killing of a 13 year old boy. Board of Internal Improvement of Lincoln County v. Moore's Adm'r (66 S. W. 417), 23 (Ky. Law) Rep. 1885, where $13,000 was awarded as damages for killing a girl 14 years old; and the recent case of Chesapeake & Ohio R. R. Co., etc., v. Cleotine Ward's Adm'r, decided December 7, 1911 (145 Ky. 733, 141 S. W. 72), where $12,500 was awarded as damages for the negligent killing of a girl 15½ years of age, whose earning power was shown to be about $20 per month. In the light of these opinions, we would be unwilling to say that $10,000 for the negligent killing of a girl, possessing the talent and earning capacity which the deceased is shown to have had, is excessive."

In Kentucky & Indiana Terminal R. Co. v. Becker's Adm'r, 185 Ky. 169, 214 S. W. 900, a verdict of $16,000 was assailed as excessive, but it was upheld by this court. The decedent in that case was a married woman 28 years of age, in good health, and performed all the household duties, except the washing and ironing. In Payne v. Bowman, 200 Ky. 171, 252 S. W. 1010, a woman 27 years of age was killed by negligence, and this court affirmed a judgment for $14,000. In the Ward, Engleman, Moore, Becker, and Bowman cases the damages were allowed for the wrongful death of women. The reasons for the allowance of damages, and the rules for the measurement thereof, make no distinctions because of sex. Surely no one would have the hardihood to say at this late day that such a distinction could have any reasonable foundation. Larger verdicts have been sustained (Louisville & N. R. Co. v. Scott, 188 Ky. 99, 220 S. W. 1066; Lou-

isville & N. R. Co. v. Smith, 203 Ky. 513, 263 S. W. 29, 35 A. L. R. 1238; Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979; Chesapeaks & O. R. Co. v. Callahan, 209 Ky. 348, 272 S. W. 880; Louisville & N. R. Co. v. Setser, 149 Ky. 162, 147 S. W. 956; Chesapeake & O. R. Co. v. John's Adm'x, 155 Ky. 264, 159 S. W. 822, 50 L. R. A. (N. S.) 853), and there is nothing in this case to make it an exception to the well-settled rule that governs our review of that question.

The court has considered with meticulous care all of the appellant's complaints, and has not been able to discover that any prejudicial error was committed by the trial court. Appellant has had two trials. The one now under review was fairly conducted, and the court was dilligent in safeguarding all the rights of appellant. In such cases we are not at liberty to interfere, as the law only requires that a litigant shall have a fair and impartial trial, and reversals are not authorized, unless the substantial rights of a party have been prejudiced by errors of the court. Civil Code, sec. 756, note 4a; De Fever v. Brooks, 203 Ky. 606, 262 S. W. 976; Shellman v. Louisville R. Co., 147 Ky. 526, 144 S. W. 1060; Chesapeake & O. R. Co. v. Conley, 136 Ky. 615, 124 S. W. 861.

The judgment is affirmed. Whole court sitting.